UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICARDO BARBOSA,<br><br>Petitioner,<br><br>v.<br><br>NORFOLK SUPERIOR COURT and<br>THE MASSACHUSETTS DEPARTMENT<br>OF CORRECTION,<br><br>Respondents. | Civil Action No. 10-10159-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**  November 18, 2011

### I. Introduction

Petitioner Ricardo Barbosa filed a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254 alleging that he is entitled to relief because his due process rights were violated when the Norfolk Superior Court, in determining that Barbosa violated his probation and sentencing him for that violation, considered conduct not specified in the probation surrender notice. Barbosa has also filed a series of separate motions and requests with the Court, styled as a motion to expand the habeas petition and record (D. 28), a motion for leave to file late notice of appeal from a state court order (D. 35), a motion "for leave and pause habeas corpus writ" (D. 38), a motion to strike (D. 39), a motion for this Court to remove the attorney representing the Respondents in this matter (D. 49), a motion to remove the "multi-victim" status of the case (D. 53), and a motion to "argue [an] issue not addressed during exhaustion of state remedies." (D. 54). For the reasons set forth below, Barbosa's petition and his various motions are each DENIED.

1

## II.    Background

### A.    First Conviction (Suffolk)

Barbosa was indicted in Suffolk County on December 31, 2003 for indecent assault and battery on a person 14 or over, contributing to the delinquency of a child, assault with a dangerous weapon, assault and battery, statutory rape of a child and threat to commit a crime. (Respondents' Supplemental Answer, D. 15 at 4, 9).[1]  He pled guilty on March 25, 2005[2] and was sentenced to three years of incarceration followed by ten years of probation. (D. 15 at 7). On November 5, 2007, Barbosa moved to vacate his sentence. (D. 15 at 8). The motion was denied the same day by the Suffolk Superior Court. (D. 15 at 8). Barbosa appealed on November 29, 2007. (D. 15 at 8). On December 21, 2007, Barbosa filed a separate motion to revise and revoke his sentence. (D. 15 at 8). Again, the motion was denied the same day by the Suffolk Superior Court and Barbosa appealed. (D. 15 at 8-9). Barbosa's two appeals were consolidated and the Massachusetts Appeals Court affirmed each of the Suffolk Superior Court's denials. Commonwealth v. Barbosa, 73 Mass. App. Ct. 1125 (2009) (Table). Barbosa appealed to the Supreme Judicial Court, which denied further review. Commonwealth v. Barbosa, 453 Mass. 1109 (2009) (Table).

### B.    Second Conviction (Plymouth)

Barbosa was indicted in Plymouth County on March 28, 2003 for one count of resisting arrest and multiple counts of receiving a stolen motor vehicle, operating a motor vehicle with a

---

[1] Citations to the Docket are to "D." followed by the docket number and (where necessary) the relevant page.

[2] Roughly eight months later, on November 28, 2005, Barbosa moved to withdraw his guilty plea. (D. 15 at 8). His motion was denied by the Suffolk Superior Court and Barbosa did not appeal the denial. (D. 15 at 8-9).

suspended license, malicious damage to a motor vehicle, assault, assault and battery on a public employee, threat to commit a crime, and possession of a Class D controlled substance. (Appendix to Respondents' Memorandum, D. 36-1 at 7). On December 7 and 8, 2005, Barbosa was found guilty or pled guilty to counts of resisting arrest, malicious damage to a motor vehicle, operating a motor vehicle with a suspended license, assault and battery on a public employee, threat to commit a crime, and possession of a Class D controlled substance, and was sentenced to one year of incarceration followed by three years of probation. (D. 36-1 at 6-7). He did not appeal this conviction. (D. 36-1 at 7).

C. **Probation**

Supervision for Barbosa's probation pursuant to his convictions in Suffolk County and Plymouth County were transferred to the Norfolk Superior Court. (D. 15 at 10-20). On January 25, 2007 a probation surrender notice issued, alleging that Barbosa had violated his probation in Quincy on January 6, 2007 by having committed an assault and battery ("Quincy charge")[3] and in Brockton on January 13, 2007 by having committed an assault by means of a dangerous weapon, two counts of threatening to commit a crime, and assault and battery on a police officer ("Brockton charges").[4] (D. 15 at 66). After the surrender notice issued, the Quincy district court charges were supplanted by indictment for attempted murder, kidnapping, threats, assault and battery and malicious destruction of property. (D. 15 at 60).

---

[3]The Quincy charge arose from a violent altercation between Barbosa and the mother of his children. (D. 15 at 149, 152-57).

[4]The Brockton charges arose from "an incident that occurred in Brockton where [Barbosa] was taken to the Brockton Hospital to be treated and he got into a scuffle with the police at the hospital and was charged as a result of that." (D. 15 at 145-46).

3

### D.     Probation Revocation Hearing

Barbosa's probation revocation evidentiary hearing was held in Norfolk Superior Court on June 27, 2007. (D. 15 at 14, 143). For purposes of the revocation hearing, Barbosa stipulated to the Brockton charges as set forth in his probation surrender notice, but did not stipulate to the Quincy charge as set forth in the notice or to the charges that superseded the Quincy charge. (D. 15 at 145-46, 153, 184, 227). At the commencement of the probation surrender hearing defense counsel argued that, because the defendant had stipulated to the Brockton charges, there was no necessity for the judge to hear evidence concerning the Quincy episode. (D. 15 at 145-47). The judge disagreed, stating:

> Well, it seems to me that the nature of the violation is very significant for purposes of disposition. So, if [the prosecution and Mr. Barbosa's counsel] don't agree about disposition, and therefore I'm going to need to make a decision about disposition, then I'm going to need to know what the violation is. And if you stipulate to one violation and not to the other, then I need to make a decision about whether there's a violation on the other ground because that bears on disposition.

(D. 15 at 147). The judge then heard evidence about events surrounding the Quincy episode - including not only the pending charges but also allegations regarding an uncharged rape - to which the defendant did not object. Specifically, the judge heard the testimony of the Quincy Police Officer who received a request from the mother of Barbosa's children for a restraining order and the pursuit of criminal charges against Barbosa and the testimony of the Quincy Police Detective who subsequently interviewed the mother of Barbosa's children and investigated the allegations she made to police regarding Barbosa's conduct. (D. 15 at 164-226). Both officers discussed the facts constituting the Quincy episode. (D. 15 at 164-226). After hearing the evidence, the judge found that the Quincy episode "amount[ed] to a violation of the law and the condition of probation that [Barbosa] was subject to," and stated that "[n]otice was given to [Barbosa] of the subsequent . . .

offense, particularly assault and battery. The evidence has certainly proved assault and battery and has proved other offenses as well." (D. 15 at 237-38).

The court then turned to sentencing and disposition. The court examined a mental health evaluation of Barbosa prepared by Bridgewater State Hospital and provided to the court by Barbosa's counsel and a copy of Barbosa's criminal history and restraining order history provided by the prosecution. (D. 15 at 242-45, 252-58). Barbosa's counsel objected to the inclusion of the latter materials, but was overruled by the judge, who stated, "I think it's important that I have an understanding of the defendant's character with reference to the disposition. I need to evaluate the extent to which h[is] presence in the community is a threat to the community." (D. 15 at 258). Barbosa then made a series of statements to the court on his own behalf. (D. 15 at 259-61, 264-71). The mother of Barbosa's children also made a statement to the court, in which she expressed her preference that Barbosa not be incarcerated. (D. 15 at 273). At the close of the hearing, the judge revoked the defendant's probation on all three Suffolk counts and sentenced the defendant to two to three years in state prison on the count of assault and battery by means of a dangerous weapon. (D. 15 at 274). Probation was to remain in effect to the end of the unexpired term on the remaining two counts. (D. 15 at 274). On the Plymouth counts, the judge extended the defendant's probation for an additional ten years on all the counts, subject to certain conditions. (D. 15 at 274-76). The defendant's subsequent motion to revise and revoke was granted, and the defendant was given a revised sentence of one year in the house of correction to run concurrently with his prison sentence on the Suffolk charges. (D. 15 at 19).

### E.     State Appellate Proceedings

Barbosa appealed to the Massachusetts Appeals Court, alleging that his due process rights

5

were violated when he was found in violation of probation based on criminal violations not specified in the probation surrender notice. (D. 15 at 42-45). The Appeals Court affirmed the revocation. Commonwealth v. Barbosa, 73 Mass. App. Ct. 1122, at *2. Barbosa then appealed to the Massachusetts Supreme Judicial Court, which denied further review on April 7, 2009. Commonwealth v. Barbosa, 453 Mass. 1109 (2009) (Table).

### F. Federal Habeas Proceedings

Barbosa filed this Petition on February 2, 2010. (D. 1). The Petition includes two counts: first, that his federal due process rights were violated because the state court relied upon conduct not specified in the probation surrender notice to determine both whether Barbosa had violated his probation and what sentence to impose as a result, and second, that his Fifth Amendment protection against double jeopardy was violated based on duplicative convictions resulting from his March 25, 2005 guilty plea in the Suffolk proceedings. (D. 1 at 6, 8). On November 22, 2010, over Barbosa's objection, the Court dismissed the second count as time-barred. (D. entry for 11/22/10). Barbosa appealed the dismissal on January 3, 2011. (D. 18). The United States Court of Appeals for the First Circuit dismissed the appeal as premature and held that Barbosa must wait until his timely due process claim is adjudicated by this Court before obtaining appellate review. (D. 24). The First Circuit's mandate issued and the record was returned to this Court on April 14, 2011. (D. 25).

In addition to his due process habeas claim, Barbosa has filed a handful of procedural motions. On June 20, 2011, Barbosa filed a document styled as a motion to expand the habeas corpus petition and record. (D. 28). On July 11, 2011, he filed a document styled as a motion for leave to file late notice of appeal from a state court sentence related to his probation violation and to consolidate that appeal into this habeas proceeding. (D. 35). On July 21, 2011 he filed a

6

document styled as a motion to "leave and pause" this habeas action in order to return to state court to file a motion for new trial and to consolidate that action back in this Court (D. 38) as well as a separate document styled as a motion to strike. (D. 39). On August 9, 2011 he filed a motion to remove opposing counsel. (D. 49). Finally, on October 25, 2011 he filed a document styled as a motion to remove the "multi-victim" status of the case (D. 53), a document styled as a motion to "argue [an] issue not addressed during exhaustion of state remedies," (D. 54), and a document requesting that the Court treat a series of documents submitted by Barbosa as evidentiary exhibits. (D. 55).[5]

## III. Discussion

### A. The June 20 Filing: Motion to Expand the Petition and Record

Barbosa entitled his June 20 filing as a "Motion to Expand Habeas Corpus Record / Docket," but the first sentence of the filing makes clear that he is also moving "to expand the habeas corpus petition." (D. 28 at 1). Barbosa seeks to include in either the record or the petition the following three topics: first, a probation violation conviction and sentence issued against Barbosa on September 10, 2010 in a proceeding separate and distinct from the probation proceedings underlying this habeas action; second, a state court prosecution brought against Barbosa on September 1, 2010 for "failure to register" while Barbosa was incarcerated in Norfolk County on March 20, 2010; third, the transcript of a March 29, 2007 state court hearing at which, according to Barbosa, "there was an apology and correction as to the nature of charges" associated with the probation revocation

---

[5]Barbosa erroneously filed the three October 25, 2011 filings in a separate federal proceeding, Barbosa v. Dillon, Civil Action No. 11-11524-JLT. (D. 15, 16, 17 in No. 11-11524). On November 2, 2011, Judge Tauro ordered the filings added to the docket in this habeas matter and, to the extent the filings sought any additional relief from Judge Tauro rather than from this Court, denied the request for relief. (D. 18 in No. 11-11524).

proceedings underlying this habeas action. (D. 28 at 2). Barbosa's June 20 filing also includes allegations that he has been attacked repeatedly while in custody. (D. 28 at 2).

The third part of Barbosa's request, regarding the transcript of the March 29, 2007 hearing, is denied as moot. The transcript of that hearing is already included in the record in the Respondents' supplemental answer to Barbosa's petition. (D. 15 at 131-40).[6]

To the extent the remainder of Barbosa's request is an attempt to supplement the record, it falls outside the bounds of the Rules Governing Section 2254 Cases in the United States District Court. Rule 7 governs expansion of the record, and pursuant to Rule 7(a), judges are permitted to expand the record on habeas proceedings only to admit "additional materials relating to the petition." The proceedings and conduct at issue in the remainder of Barbosa's request to expand the record or docket do not relate to his habeas petition - indeed, they postdate the proceedings at issue in the petition by nearly three years - and thus do not provide a basis for expanding the record.

Alternatively, to the extent the remainder of Barbosa's request is an attempt to expand the petition itself, the request must be denied because amending the petition at this point is time-barred. The probation revocation determination at issue in Barbosa's petition became final on April 1, 2009, Commonwealth v. Barbosa, 453 Mass. 1109 (2009) (Table), and Barbosa was thus required to complete his application for a writ of habeas corpus within one year, before April 1, 2010, 28 U.S.C. § 2244(d), unless any subsequent "otherwise untimely pleading amendments . . . 'relate back' to the date of the timely-filed original pleading." United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005)

---

[6]The hearing in question appears to be an effort to schedule the probation revocation proceedings that eventually took place on June 27, 2007. (D. 15 at 131-40). At any rate, it does not appear that the transcript supports Barbosa's assertion that the hearing included any "apology" or "correction as to the nature of charges." (D. 28 at 1).

8

(quoting Fed. R. Civ. P. 15(c)(2)). To relate back, "amended habeas corpus claims generally must arise from the same core facts [as the original petition] and not depend upon events which are separate both in time and type from the events upon which the original claims depended." Id. (internal quotations and citation omitted). Here, Barbosa's request to expand the petition was filed on June 20, 2011, well beyond the April 7, 2010 deadline, and the proceedings and conduct alleged in the remainder of Barbosa's request are separate in time and in nature from the due process violations Barbosa alleges were present in his probation revocation proceeding.

B. **The July 11 Filing: Motion to File Late Notice of Appeal**

Barbosa entitled his July 11 filing as a "Motion for Leave to File Late Notice of Appeal from the Order of 9/10/10 on NOCR 2007-00051 & NOCR 2007-00351 and to Consolidate That Appeal to Related Above Issued Docket Number." (D. 35 at 1). This appears to be a continuation of the first part of Barbosa's June 20 filing; the first part of the June 20 filing sought to expand either the record or the habeas petition to encompass the state court probation violation conviction and sentence issued against Barbosa on September 10, 2010, and the July 11 filing seeks to either expand the record or the habeas petition to encompass Barbosa' subsequent state court appeal of his September 10, 2010 conviction and sentence. (D. 35 at 1). Accordingly, Barbosa's July 11 filing- whether construed as a motion to expand the record or as a motion to amend Barbosa's habeas petition - fails for the same reasons as his June 20 filing.

C. **The First July 21 Filing: Motion for Leave and Pause**

Barbosa entitled his first July 21 filing as a "Motion for Leave and Pause Habeas Corpus Writ and to Return to Suffolk Superior Court and File a Motion for New Trial and to Consolidate Back to the U.S. District Courthouse Dkt. No. 10159-DJC as Count Two was Dismissed and is the

9

Horse that Pulls the Carriage." (D. 38 at 1). The Court construes this filing as a motion for a stay. Under certain circumstances, a federal court may stay a § 2254 habeas proceeding to allow the petitioner to exhaust in state court claims that were unexhausted when initially presented in federal court. Rhines v. Weber, 544 U.S. 269, 277-78 (2005). Here, however, the second count in Barbosa's petition was dismissed not because it was unexhausted but because it was time-barred, (Respondents' Motion to Dismiss Ground Two of the Petition for Writ of Habeas Corpus as Time-Barred, D. 10 at 1; D. entry for 11/22/10 (granting motion)),[7] and under these circumstances there is no legal basis for granting Barbosa's motion for a stay.

### D. The Second July 21 Filing: Motion to Strike

Barbosa entitled his second July 21 filing as a "Motion to Strike Respondents' Discrepancies & Deficiencies in the Pleading." (D. 39 at 1). The Court construes this filing, which is somewhat unclear at points, as a motion to strike. Motions to strike are "narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." Boreri v. Fiat S.p.A., 763 F.2d 17, 23 (1st Cir. 1985); see Fed. R. Civ. P. 12(f) (providing that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"). "Even when technically appropriate, motions to strike are not typically granted absent a showing of prejudice to the moving party." United States v. Sampson, 2011 WL 5022651, at *28 (D. Mass. October 20, 2011). Here, it appears that Barbosa seeks to strike Respondents' filings in response to his June 20 filing seeking to expand either the habeas record or the habeas petition. Barbosa has

---

[7]The deadline for Barbosa to file a habeas petition based on the conviction underlying Barbosa's second count was April 12, 2006; Barbosa did not file the instant habeas petition until February 2, 2010, nearly four years after the relevant deadline. (Respondents' Motion to Dismiss Ground Two, D. 11 at 2 and App'x).

neither alleged nor shown that anything in Respondents' filing is redundant, immaterial, impertinent, or scandalous, nor that the filing prejudices Barbosa in any way, and the Court will not exercise its discretion to strike the filing at issue.

### E. The August 9 Filing: Motion to Remove Opposing Counsel

Barbosa entitled his August 9 filing as a "Motion Request for Judge to Remove Respondents' Attorney as She has Now Become A Witness & Defendant In A Civil Action Litigation Lawsuit." (D. 49 at 1). In this filing, Barbosa alleges that Respondents' counsel has filed criminal charges against Barbosa and that Barbosa "might be seeking court action pursuant to Massachusetts General Laws chapter 258, section 4,"[8] and that Respondents' counsel is now subject to a conflict of interest. (D. 49 at 1-2). Barbosa has neither provided the Court with any evidence regarding the existence of either alleged lawsuit nor supplied any other evidence in support of his allegations.[9] Respondents have filed a notice with the Court stating that "[n]either Counsel for Respondents nor the Attorney General's Office have brought criminal charges against [Barbosa]." (Notice of Clarification, D. 51 at 1). In light of Respondents' notice and in the absence of any evidence suggesting the existence of a conflict of interest, there is no basis for disqualifying Respondents' counsel.

### F. The First October 25 Filing: Motion to Alter "Multi-Victim" Status

Barbosa entitled his first October 25 filing as a "Motion to Procure the Docket with Respondent's False Information and to Make Confidential to Public Scrutiny Due to Security and Safety Issues Which Have Resulted Due to Respondent's Care." (D. 53 at 1). In his filing, Barbosa

---

[8]The statute cited by Barbosa governs civil actions against certain public entities. Mass. Gen. L. c. 258, § 4.

[9]Barbosa did attach two news clippings to his filing, but neither addresses any civil or criminal litigation involving either Barbosa or Respondents' counsel. (D. 49-1 at 1-2).

11

alleges that he has been subjected to violence while in custody because other prisoners are aware of the fact that Barbosa's habeas case has been assigned "multi-victim" status, asserts that this status is incorrect because "there is only one alleged victim in question," and asks the Court to remove the "multi-victim status" in the case. (D. 53 at 1). Barbosa is correct that the docket of this case reflects multi-victim status, consistent with the Respondents' filing on December 3, 2010 stating that "the offenses of which Petitioner Ricardo Barbosa was convicted and upon which his habeas corpus petition is based did have victims, as that term is defined in [the Crime Victims' Rights Act of 2004,] 18 U.S.C. § 3771." (D. 14 at 1). The Court's independent review of the record confirms the Respondents' statement. Barbosa's probation was revoked on the basis of both the Brockton charges, the alleged victim or victims of which were "the police" (D. 15 at 146), and the Quincy charge, the alleged victim of which was the mother of Barbosa's children (D. 15 at 236-37), and the various prior convictions for which Barbosa was on probation involved multiple victims. (D. 11-1 at D. 15 at 9, D. 36-1 at 7). The multi-victim status of the case is appropriate.

### G. The Second October 25 Filing: Motion to Address Unexhausted Issue

Barbosa entitled his second October 25 filing as a "Motion to Argue Issue Not Addressed During Exhaustion of State Remedies in the Form of a Moffett Brief as Appellant Counsel Did Not Argue Issues and Grounds in State Court, Which Petitioner Now Has to Correct Thru a New Docket #." (D. 54 at 1). In the filing, Barbosa seeks permission to challenge as "extreme and excessive" the sentence of two to three years incarceration in state prison followed by ten years of probation he received at the close of his March 29, 2007 probation revocation hearing. (D. 54 at 1). Barbosa's motion fails to mention that Barbosa and the Commonwealth subsequently jointly moved in state court to revise and revoke the sentence at issue, that the motion was granted, and that the sentence

12

was revised to a one year of incarceration served concurrently with other sentences being served by Barbosa. (D. 15 at 19). In light of the revision of the sentence at issue in Barbosa's motion, the motion is dismissed as moot.[10]

### H. The Third October 25 Filing: Letter Request

Barbosa's final filing is a handwritten letter asking the Court to "add . . . as EXHIBIT A &B" a series of documents attached to the letter. (D. 55 at 1). The attached documents include what appears to be a transcript of a March 29, 2007 proceeding in Norfolk Superior Court to correct paperwork with regard to his probation revocation (D. 55-1), what appears to be a copy of Barbosa's motion for reconsideration of his sentence on probation violation with a handwritten denial added bu the presiding justice (D. 55-2 at 1-2), what appear to be letters and affidavits in support of Barbosa's motion for reconsideration (D. 55-2 at 3-9), what appears to be a partially redacted copy of an amended notice to surrender provided to Barbosa (D. 55-2 at 10), what appears to be a partially redacted letter from a therapist at the South Bay Mental Health Center discussing Barbosa (D. 55-2 at 11), and what appears to be a partially redacted copy of Barbosa's conditions of probation dated December 8, 2006. (D. 55-2 at 12). Barbosa's letter to the Court is not styled as a motion and does not appear to formally enlarge the habeas record. Nor would inclusion of these materials in the habeas record affect the Court's analysis of Barbosa's Petition. The Court notes that the documents submitted by Barbosa are now included on the docket and anticipates that this inclusion fully satisfies Barbosa's letter request; to the extent the letter request seeks any further relief such relief

---

[10]The Respondents interpret Barbosa's Second October 25, 2011 filing differently. (D. 57 at 1-2). They construe the filing as a request by Barbosa for permission to argue the merits of the second count included in his Petition. (D. 57 at 1). If their interpretation of Barbosa's Second October 25, 2011 filing is correct, the filing is substantially similar to Barbosa's First July 21, 2011 filing, and, like that filing, is deficient because the second count is time-barred.

is denied.

## I. The Habeas Petition

Barbosa's various motions and requests thus resolved, the Court turns to the merits of the Petition. A petitioner's application for a writ of habeas corpus seeking relief from a claim that was adjudicated on the merits in state court proceedings cannot be granted unless the petitioner's state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); Clarke v. Spencer, 582 F.3d 135, 144 (1st Cir. 2009).

Here, Barbosa argues that his due process rights were violated when the judge presiding over Barbosa's probation revocation hearing in Norfolk Superior Court on June 27, 2007 considered evidence related to events not included in the probation surrender notice issued on January 25, 2007 - specifically, that the judge considered evidence related to the Quincy episode that led to Barbosa being charged with kidnapping and attempted murder, as well as to allegations (but no charges) of rape, even though Barbosa's surrender notice mentioned only the Quincy charge of assault and battery and he had already stipulated to the Brockton charges, which were sufficient to establish that Barbosa had violated his probation. It is not clear whether Barbosa's objection is to the probation revocation court's determination that Barbosa violated his probation or the court's subsequent sentence; in the interest of completeness, the Court will construe Barbosa's objection as applying to both the violation and sentencing decisions.

### 1. Violation of Probation

A "probationer is entitled to written notice of the claimed violations of his probation" prior

to the final revocation of his probation. Black v. Romano, 471 U.S. 606, 612 (1985). For the failure to provide written notice to form a basis for habeas, a petitioner must demonstrate that he was prejudiced by the omission. See Martineau v. Perrin, 601 F.2d 1201, 1205 (1st Cir. 1979) (holding that "non-prejudicial variances between the written [probation surrender] notice and the . . . final findings of violations do not offend due process"); see also White v. U.S. Parole Comm'n, 856 F.2d 59, 61 (8th Cir. 1988) (holding that "[i]n order for the failure to provide written notice to form a basis for habeas relief, however, a petitioner must demonstrate that he was prejudiced by the claimed defect"); Heath v. U.S. Parole Comm'n, 788 F.2d 85, 89 (2d Cir. 1986) (collecting cases supporting the proposition that even if probation revocation notice is deficient, "habeas relief" is "predicated . . . upon a showing of prejudice or bad faith"), cert. denied, 479 U.S. 953 (1986).

The Massachusetts Appeals Court evaluated Barbosa's claim and held that the trial court's consideration of the entire course of conduct underlying the Quincy episode neither violated due process nor prejudiced Barbosa. The appellate court examined Barbosa's contention that "his entitlement to written notice of the claimed violations of probation was violated because the Quincy episode was not set forth in the probation surrender notice" and held that "[t]he original Quincy charge satisfied this requirement." Barbosa, 73 Mass. App. Ct. 1122, at *1 n.4.[11] The appellate court further noted that, "[e]ven assuming that the Quincy episode could not form the basis for finding that the defendant had violated his probation because the conduct was not specified in the

---

[11]In support of this holding the appellate court cited to Commonwealth v. Mejias, a state appellate case affirming a probation revocation after a hearing that examined the entire course of conduct underlying a charge of breaking and entering, even though the course of conduct included other non-charged criminal allegations against the probationer (including assault and battery and use of illegal drugs) and even though the breaking and entering charge was subsequently dismissed for failure to prosecute. Commonwealth v. Mejias, 44 Mass. App. Ct. 948, 949 (1998).

15

surrender notice, the defendant's due process rights were not infringed. The defendant stipulated to violating his probation by committing the Brockton charges. Because of his stipulation, he suffered no prejudice even if the Quincy episode was also considered in determining whether he had violated his probation." Id. at *1.

The appellate court's conclusion with regard to prejudice is plainly correct. There is no dispute that Barbosa's stipulation to the Brockton charge was sufficient to establish that Barbosa had violated his probation.[12] Consideration of the Quincy episode cannot have prejudiced Barbosa with regard to a probation violation determination because Barbosa had already stipulated to the fact that he had violated his probation. In the absence of prejudice or any allegation (let alone showing) of bad faith by any party, there is no basis for habeas relief with regard to the state court's determination that Barbosa violated his probation.

### 2. Disposition and Sentence

The Supreme Court "has long recognized that sentencing judges exercise a wide discretion in the types of evidence they may consider when imposing sentence and that highly relevant - if not essential - to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Pepper v. United States, 131 S.Ct. 1229, 1235 (2011) (internal quotations and alterations removed). "[A]s a general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." Witte v. United States, 515 U.S. 389, 398 (1995) (citations and quotation marks omitted). Thus, in the sentencing

---

[12]Indeed, Barbosa's counsel spent a considerable amount of time a the probation revocation hearing arguing that it was inappropriate to consider evidence regarding the Quincy episode precisely because Barbosa stipulated to the Brockton charges and thus admitted that he had violated his probation. (D. 15 at 145-47).

context, the inquiry relevant to the due process challenge in Barbosa's habeas petition is quite limited: the petition will fail "so long as th[e] penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." Chapman v. United States, 500 U.S. 453, 465 (1991) (internal citations omitted).

The Massachusetts Appeals Court reviewed the probation revocation court's consideration of the Quincy episode for sentencing purposed and found no error. The appeals court stated:

> The Quincy episode could be considered in determining disposition. In probation revocation proceedings involving straight probation, like this one, the judge is called upon to exercise a discretion not significantly different from that exercised by a sentencing judge after a finding of guilt. A sentencing judge has discretion to consider a broad range of information in imposing sentence. Among other things, a judge may consider other pending criminal charges, the facts attending the commission of the crime, past uncharged conduct, the defendant's character, family life, and employment situation; and indictments or evidence of similar or recurrent criminal conduct if it is relevant in assessing the defendant's character and propensity for rehabilitation. We see no reason why similar information cannot be considered in the context of imposing sentence for a probation violation, provided the defendant is not punished for the uncharged conduct.
>
> Here, the judge made clear that she considered the Quincy episode "important [so] that I have an understanding of the defendant's character with reference to disposition. I need to evaluate the extent to which h[i]s presence in the community is a threat to the community." The Quincy episode could correctly be considered for this purpose, if for no other reason than to aid the judge in determining the appropriate special conditions to attach to the defendant's further probation. Given the similarity between the Quincy episode and certain of the crimes to which the defendant had previously pleaded guilty, supra, the information was particularly pertinent to the defendant's character and propensity for rehabilitation. The defendant has not pointed to any aspect of the sentence that leads us to conclude that the judge relied on evidence concerning the Quincy episode for any purpose beyond that which she stated.

Barbosa, 73 Mass. App. Ct. 1122, at *2 (internal citations, notes and quotation marks omitted).[13]

---

[13]The appellate court further noted that the state court Rules for Probation Violation Proceedings enumerate six factors that a judge may consider in arriving at a disposition: "(1) the recommendation of the probation department, (2) public safety, (3) the seriousness of the crime of which the probationer was found guilty, (4) the nature of the probation violation, (5) the

This Court agrees. Given the fact that Barbosa had already been found in violation of his probation, it was appropriate - and, more importantly, wholly consistent with Supreme Court precedent as set forth in cases like Pepper, Witte and Chapman - for the court ruling on the probation revocation to consider the Quincy episode for the purpose of assessing his dangerousness in the community and using that assessment in fashioning an appropriate sentence and probation conditions. Accordingly, the process by which Barbosa was sentenced did not violate due process and does not provide a basis for granting habeas relief.

## IV. Conclusion

For the reasons discussed above, Barbosa's Petition for Writ of Habeas Corpus, Motion to Expand the Petition and Record, Motion to File Late Notice of Appeal, Motion for Leave and Pause, Motion to Strike and Motion to Remove Opposing Counsel are DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

record of any previous violations, and (6) the impact on any victim of the underlying crime." Commonwealth v. Barbosa, 73 Mass. App. Ct. 1122, at *2 n.5.